IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff

v.

[1] CARLOS L. AYALA-LÓPEZ,
[10] EUSEBIO O. LLANOS CRESPO,

Defendants

CRIMINAL 03-0055 (JAG)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Docket No. 572; opposition Docket No. 715)

On July 22, 2005, co-defendant Carlos L. Ayala-López moved to exclude Rule 404(b) evidence, in particular, evidence of an arrest which took place on October 10, 1997, and an apparent conviction based upon that arrest, which conviction allegedly occurred on March 17, 1998.[1]  (Docket. No. 572.)  The defendant notes that he expects the government to present evidence of this act, after it replied to a request to produce notice of Rule 404(b) evidence.  The notice stated that on October 10, 1997, the defendant illegally possessed various firearms as set forth in the local police reports provided in discovery.  The defendant was arrested and arguably convicted of three weapons violations in relation to that incident.

The defense argues that such evidence is being offered by the government solely and impermissibly to establish the defendant's propensity for crime.  The defendant argues that the proffered evidence is not admissible under Federal Rule

---

[1] This is the date certain of the defendant's state weapons charges were apparently dismissed under Rule 247(a), P.R. Rule of Crim. Proc. App. II (Pocket Part 1998).  No probable cause had apparently been found in relation to the obliterated serial number charge on March 2, 1998.

CRIMINAL 03-0055 (JAG)                           2

of Evidence 404(b) to show intent, knowledge, plan, identity or absence of mistake. He argues further that the government has failed to show any logical nexus between the proffered 404(b) evidence and the asserted purpose of its admission. He stresses that there is insufficient proof that the defendant illegally possessed firearms on October 19, 1997, and adds that contrary to the allegation of the United States, the defendant was never convicted of any firearms offense. Furthermore, he argues that the alleged possession is too remote in time, is not relevant to the crimes charged, and that the proffered evidence is substantially more prejudicial than probative and should thus be excluded under Rule 403. In its penultimate argument, the defense stresses that permitting evidence of the 1997 incident presents the danger of the jury conducting a trial on unrelated and uncharged prior bad acts. See United States v. Temple, 862 F.2d 821, 823-24 (10th Cir. 1988). And finally because this is a death penalty case, the defense finally argues that his constitutional and statutory rights would be violated by its admission. Consequently, the defense argues the other acts evidence should be excluded.

The United States has given notice to the defendant that it intends to introduce in its case-in-chief the following evidence: possession of one Taurus pistol, Model PT92AFS, 9mm caliber, Serial Number TOE-87142, loaded; a Smith and Wesson pistol, 9 mm. caliber, with a mutilated serial number, loaded; and a Smith and Wesson magazine loaded with fifteen (15) 9mm rounds seized on October 18, 1997 at the La Perla Sector, San Juan, Puerto Rico. (Docket No. 715, dated December 2, 2005.) Contrary to the position of the defense, the United States argues that such evidence constitutes evidence of opportunity, intent, plan, preparation, knowledge and/or absence of mistake or accident. The government argues that possession of these firearms in 1997 would allow a jury to freely find that at the

CRIMINAL 03-0055 (JAG)                        3

time of the indictment the defendant possessed, brandished and used firearms. The United States seeks that the court allow it to introduce the 1997 evidence in trial and reserve its ruling until it can show how the evidence fits in with other evidence in the case, and how it can be clearly understood, within the context of the trial itself. See United States v. Lachman, 48 F.3d 586, 590-91 (1st Cir. 1995).

The United States Court of Appeals for the First Circuit has adopted a two-part test for determining the admissibility of Rule 404(b) evidence. "First, the district court must determine whether the evidence has some 'special relevance' independent of its tendency simply to show criminal propensity." United States v. Trenkler, 61 F.3d 45, 52 (1st Cir. 1995). "Second, if the evidence has 'special relevance' on a material issue, the court must then carefully conduct a Rule 403 analysis to determine if the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." Id. (footnote omitted); see United States v. García, 983 F.2d 1160, 1172 (1st Cir. 1993); United States v. Lynn, 856 F. 2d 430, 434-35 (1st Cir. 1988). This rule invites careful scrutiny of the evidence the government wishes to introduce as well as the reasons proffered by the government for presenting the evidence. See United States v. Tavares, 21 F.3d 1, 5 (1st Cir. 1994). Relying on Rule 403, the defendant argues that the slightly probative value of such evidence is outweighed by the danger of unfair prejudice. The defense stresses that the government's notice of intent to introduce extrinsic evidence is lacking in that it fails to articulate the logical nexus between the proposed evidence and the asserted purpose of its admission. That is, the government must show the court and identify the element of proof for which the evidence is being offered.

The evidence of the possession of the weapons in 1997 might plausibly reflect and be probative of a predisposition to possess weapons. E.g., United States v. Van

CRIMINAL 03-0055 (JAG)                4

Horn, 277 F.3d 48, 56-57 (1st Cir. 2002); United States v. Pisari, 636 F.2d 855, 858-59 (1st Cir. 1981). It might also show the background, formation and development of related actions. United States v. Flecha Maldonado, 373 F.3d 170, 178-79 (1st Cir. 2004). The similarity of the acts of 1997 might be relevant to each count. See United States v. Rodríguez, 215 F.3d 110, 120-21 (1st Cir. 2000); United States v. Aguilar-Aranceta, 58 F.3d 796, 798-99 (1st Cir. 1995). And the 1997 act may be clearly relevant to defendant's knowledge and intent in possessing and brandishing weapons. United States v. Trenkler, 61 F.3d at 55-56; United States v. Hadfield, 918 F.2d 987, 994 (1st Cir. 1990); cf. United States v. Flores Pérez, 849 F.2d 1, 7 (1st Cir. 1988). Furthermore, a space of slightly over three years between the other acts and the beginning of the charged conspiracy might not be so remote as to make such evidence unfairly prejudicial or irrelevant. United States v. Decicco, 370 F.3d 206, 210-12 (1st Cir. 2004); United States v. Varoudakis, 233 F.3d 113, 119 (1st Cir. 2000); cf. United States v. Frankhauser, 80 F.3d 641, 648-49 (1st Cir. 1996).

The United States argues tersely that the arrest of 1997 goes to the defendant's intent, knowledge, plan, absence, absence of mistake or identity, in short, an abbreviated litany of Rule 404(b), and reminds the court of its broad discretion in allowing such evidence. The government stresses that the 1997 possession of the firearms goes directly to more than one of the essential elements of the offenses charged in the indictment.

The crux of the Rule 404(b) probativeness analysis is that "the prior bad acts must have some 'special' relevance to something other than propensity[,]" that is, that there be "some articulable inference for the jury to draw from the previous offense other than that the defendant had the bad character and therefore more probably had the intent to commit the crime he is now charged with." United States

CRIMINAL 03-0055 (JAG)                                5

v. Lynn, 856 F.2d at 436 (footnote omitted).  The ordinary inference made here would seem very close to the inference that Rule 404(b) is trying to avoid.  I explain.

The United States has announced that it will introduce at least three separate acts, all of which involve the possession of weapons, as part of the prosecution's case-in-chief.  None of these acts resulted in convictions, and Rule 404(b) does not require a conviction.  The acts other than the 1997 arrest occurred during the existence of the charged conspiracy.  The 1997 act occurred more than three years prior to the existence of the charged conspiracy and if one regards the proffer of the government, such act does not explain the background, formation, and development of the illegal relationship.  See United States v. Varoudakis, 233 F.3d at 120-21 (citations omitted).  I consider other 404(b) inclusion factors in the following analysis.

### Identity

The 1997 act cannot be admitted to prove identity since the 1997 act would become specially relevant to identity if the 1997 act and some act or acts of the conspiracy are sufficiently idiosyncratic to support the inference that they are the handiwork of the same individual.  See United States v. Trenkler, 61 F.3d at 53.  To carry a weapon during the commission of a drug crime is not idiosyncratic.  To always carry a weapon in the waistband is not idiosyncratic and of special relevance.  See Huddleston v. United States, 485 U.S. 681, 689 (1988); also see United States v. Pisari, 636 F.2d at 858-59.  Nor is it of special relevance to carry a weapon with an obliterated serial number.

### Knowledge or Intent

While the 1997 act might arguably show knowledge or intent when the defense is a general denial of the charges, a weighing of the allowed and forbidden factors

CRIMINAL 03-0055 (JAG)                6

reflects that when compared to evidence of propensity, the "special" relevance in relation to knowledge or intent fades. The 1997 act is a stand alone episode while the charged offense is conspiracy, notwithstanding that at very least three overt acts have similarity to the 1997 act. Precisely because of that similarity, and because of the absence of other factors which might make the 1997 incident specially relevant, such as prior involvement with identical co-conspirators to prove intent (see United States v. Crocker, 788 F.2d 802, 804 (1st Cir. 1986)), evidence of knowledge or intent is not a viable argument to support its admission. Cf. United States v. Rubio-Estrada, 857 F.2d 845, 847-48 (1st Cir. 1988). Rather, a comparison is naturally invited to see the similarity between the 1997 act with acts in the charged conspiracy, and each of the non-conspiracy counts. Such a comparison further invites an impermissible inference that the defendant committed a bad act then so he must have committed a bad act now.

### Plan

The 1997 act does not present evidence of a common plan, a continuing plan, or birth of a plan. First, the number of years between the 1997 incident and the charged conspiracy make the existence of such a plan remote and unlikely. That weapons were possessed in 1997 does not draw a connection to the current conspiracy. That the defendant carried guns then as charged now is insufficient to address the query of whether the proffered evidence is of propensity and bad character rather than plan, particularly since no other identified players in the conspiracy are associated with the 1997 incident. See United States v. Varoudakis, 233 F.3d at 119-21; United States v. Escobar-De Jesús, 187 F.3d 148, 168-69 (1st Cir. 1999).

CRIMINAL 03-0055 (JAG)                    7

In summary, the relevance of the 1997 act is minimal and at very least coincidental, and the tendency to draw the propensity inference great. United States v. Lynn, 856 F.2d at 434-36; see United States v. Mann, 590 F.2d 361, 369-70 (1st Cir. 1978).

But, assuming that the 1997 act bridges the hurdle of 404(b), the inquiry of a 403 balance results in the conclusion that the probative value of the uncharged, prior conduct is unfairly, not fairly, prejudicial to the defendant. First, the conduct is remote, more than three years, to the current conspiracy. See, e.g., United States v. Smith, 292 F.3d 90, 100 (1st Cir. 2002). While remoteness is flexible and certainly not dispositive of the issue, the fact that there are three other incidents of uncharged acts which constitute crimes as to which the defendant has always been charged and always prevailed. That the government be allowed to admit evidence of a 1997 crime, a bad act but not a conviction, to prove some element of the conspiracy which begins three years later, and which includes similar, relevant, (see United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996); United States v. Tutiven, 40 F.3d 1, 5 (1st Cir. 1994)), although not "specially relevant" acts, results in unfair prejudice to the defendant. See United States v. Gilbert, 229 F.3d 15, 22-23 (1st Cir. 2000); cf. United States v. Aguilar-Aranceta, 58 F.3d at 799-800; United States v. Karas, 950 F.2d 31, 37-38 (1st Cir. 1991); United States v. González-Sánchez, 825 F.2d 572, 581 (1st Cir. 1987). The government yet has in its formidable arsenal evidence of conspiracy and tools of the trade, that is, at least three overt acts spelled out in count one of the indictment which are intrinsic to the offense charged in count one. The government does not need to present the 1997 act in its case in chief, since it has other special relevant bad acts evidence to prove the issues it relates in its memorandum. See United States v. Varoudakis, 233 F.3d at 122-24;

CRIMINAL 03-0055 (JAG)                    8

United States v. Rodríguez-Estrada, 877 F.2d 153, 155-56 (1st Cir. 1989). Assuming that there is some remote connection between the 404(b) factors and the "special" relevance requirement for admission, such relevance only slightly overlaps the criminal character and propensity inferences which Rule 404(b) was designed to insulate the defendant from. See United States v. Procopio, 88 F.3d 21, 29-30 (1st Cir. 1996); cf. United States v. Wood, 924 F.2d 399, 401 (1st Cir. 1991). This dilemma increases the burden of the jury as well as the risk of prejudice. This overkill is unfairly prejudicial.

Should the prosecutor focus on a particular element of Rule 404(b), and should the court reject this recommendation, a precise cautionary instruction must be given to the jury to assure that it does not focus on the impermissible premise that the defendant has the propensity to commit weapons law violations, as shown by the prior act and the current offenses.

In view of the above, I recommend that the motion in limine to exclude evidence of the 1997 act be granted and that the government be precluded from introducing evidence of the 1997 bad act in its case-in-chief.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6

CRIMINAL 03-0055 (JAG)                         9

(1st Cir. 1987); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980).

   At San Juan, Puerto Rico, this 24th day of January, 2006.


                                        S/ JUSTO ARENAS
                                  Chief United States Magistrate Judge