IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff

v.

[1] CARLOS L. AYALA-LÓPEZ,
[10] EUSEBIO O. LLANOS CRESPO,

Defendants

CRIMINAL 03-0055 (JAG)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Docket No. 596; opposition Docket No. 670)

On July 26, 2005, co-defendant Carlos L. Ayala-López moved to suppress or exclude Audiotapes and Transcripts and for a pre-trial Carbone hearing (Docket No. 596) under Rule 403, Federal Rules of Evidence, and the Fourth, Fifth, Sixth and Eighth Amendments of the United States Constitution. The defendant generally questions the audibility and reliability of the tapes. Specifically, the defendant objects to the admission of such evidence and would expect to show that:

1) The recordings, which took place on May 13, 15, 16 and 23, (and June 14)[1] 2002 do not accurately reproduce the incidents that took place;

2) The audiotapes are inaccurate and distorted;

3) The audiotapes do not accurately reproduce the conversations that took place;

---

[1] The June 14, 2002 tape was announced much after the motion was filed.

CIVIL 03-0055 (JAG)                              2

4) The audiotapes are not authentic;

5) The audiotapes have been altered, or modified;

6) The audiotapes are untrustworthy;

7) The inaudible parts of the audiotapes are so substantial as to make the rest more misleading than helpful;

8) The audiotapes contain background and foreground noises and interference;

9) The audiotapes are inaudible or unintelligible in material part;

10) The audiotapes suffer from technical deficiencies which make them untrustworthy and unreliable;

11) The audiotapes are not genuine and lack the requisite foundational basis necessary for admissibility;

12) The audiotapes are inaudible and do not permit the listener to ascertain with reasonable reliability the sense in which the speaker used the words that can be heard;

13) The audiotapes will cause the jury to arrive at an interpretation of the recordings based on mere speculation and imagination;

14) The audiotapes are taken out of context and are incomplete, misleading, and unreliable;

CIVIL 03-0055 (JAG)                           3

15) The quality of the audiotape recordings is poor, containing background and foreground interference, random noise, prominent distortions, which obscure large portions of the recordings;

16) Any arguably probative value of the audiotapes is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time;

17) The audiotapes have been improperly "enhanced," resulting in their modification and unreliability;

18) The audiotape transcripts are not authenticated;

19) The audiotape transcripts are inaccurate;

20) The audiotape transcripts are unreliable and inadmissible for all of the reasons that the audiotapes themselves are unreliable and inadmissable as stated herein above.

Docket No. 596.

A recording device was given to the confidential informant who agreed to wear it and use it at the drug point in the public housing project. He was not supervised during the recordings at the drug point and there was no surveillance of him during the recording. The confidential informant would then give the recording device to the control agent, Héctor Orta, who would then give it to the FBI Electronic

CIVIL 03-0055 (JAG)                                4

Surveillance Clerk, who would then download the recording to a computer and create a disc, CD, which would become the original.

The motion was called for hearings on January 26, and 27, 2006. At said hearings, the government played the unedited recordings taken on May 15 (Exhibit 12), which played for about two and one half hours, and contain conversations between the informant and others. There are lengthy spaces containing static, motorcycle sound, motor vehicle noise, garbled conversations of people, children playing. Following the transcript of the conversation, for example, there is much extraneous noise such as motorcycle or car motor noises, a brief break in recording, much static, as well as music, a radio program, banging, continuous muffled mechanical engine noise in foreground. Lyrical rap or reggae music is also heard.

The May 16, 2002 tape recordings (I.D. 45a, I.D. 46a) had interference, loud music, and a radio commercial as well as incriminating statements. The May 23, 2002 tape contains conversations of drugs and weapons. (I.D. 48A.) The June 14, 2002 recording contains what appears to be a drug purchase. (I.D. 47a.)

The defendant cites in his motion United States v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986), in support of the request for a hearing to determine the admissibility of the audiotapes and transcripts. The defendant argues that the audiotape recordings are inaccurate, not authentic, and untrustworthy and will lead the jury to guess-work and speculation. They argue that the tapes have supposedly been enhanced and appear to have been altered and modified. The defense argues further

CIVIL 03-0055 (JAG)                             5

that the government has produced transcripts along with the audio recordings and that they are likewise inaccurate and unreliable and cannot be properly authenticated. Finally, the defendant argues that although the evidence may be relevant, it should be excluded because the probative value of the audiotapes is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, as well as by considerations of undue delay and waste of time.

The government responds that the audio recordings are admissible under Carbone, that the admission of the recordings would not mislead the jury, or create an unfair prejudice, and that the proper procedure is for the court to review the recordings and render a pretrial ruling.

In United States v. Carbone, 798 F.2d at 24, the First Circuit explained that when the government seeks to present tape recordings as evidence, "[t]he government has the duty of laying [the proper] foundation [to establish that] the tape recordings accurately reproduce the conversations that took place, i.e., that they are accurate, authentic, and trustworthy." Once this is done, then the party challenging the admissibility of audio tapes has the burden of demonstrating that the recordings are inaccurate. United States v. Carbone, 798 F.2d at 24 (citing United States v. Rengifo, 789 F.2d 975, 978-79 (1st Cir. 1986)); see United States v. Font-Ramírez, 944 F.2d 42, 47 (1st Cir. 1991); United States v. Crouse, 227 F.R.D. 36, 41-42 (N.D.N.Y. 2005). Furthermore, the generally accepted rule is that when

CIVIL 03-0055 (JAG)                                              6

the challenge is to the audibility of the recordings, "the question is whether 'the inaudible parts are so substantial as to make the rest more misleading than helpful.'" United States v. Carbone, 798 F.2d at 24 (citations omitted).

I have listened to the audio recordings of the conversations in which the defendant Ayala-Lopez' voice is allegedly identified. They are inaudible in great parts, garbled in part, sometimes because many people are talking at once or two people are talking at once. The tapes are generally saturated with naturally obscene language. There is a lot of background noise which makes some conversations difficult to follow completely. See United States v. Panzardi-Lespier, 918 F.2d 313, 318 (1st Cir. 1990). The fact that enhancements will be made of the audio recordings will not render the end product and improved rerecording somehow suspect and less accurate, particularly if the voices are made more clear and background noises are more filtered. See United States v. Carbone, 798 F.2d at 24; United States v. Beeler, 62 F. Supp. 2d 136, 148-49 (D. Me. 1999).

None of the tapes are so inaudible or unintelligible as to make them more misleading than helpful even with large gaps and background noises. See United States v. Aisenberg, 120 F.Supp. 2d 1345, 1348-49 (M.D. Fla. 2000). The government announced that it will not be playing the complete tapes although the continuity of play would belie any argument of tailoring or unfair selective editing. While a major part of the recordings do not reflect delictive conduct and much of the conversation is innocuous, the close relationship among most of the speakers

CIVIL 03-0055 (JAG)                              7

reflects a loose commonality of purpose and life style revolving around the distribution of narcotics, the use and carrying of weapons, acts of violence, and in general, participating in conduct which skirts the law. There are also some incriminating statements of defendant Ayala-López.

The government's theory is that this evidence, together with testimonial evidence at trial will show that the speakers were a part of an agreement to possess with intent to distribute controlled substances at and near a drug point.

While the length of the tapes is disproportional to the strong evidence elicited in some of its parts, the remainder of the tape recordings cannot be deemed an unnecessary waste of time for the jury in order to have them fully understand the breathe and extent of the charged criminal enterprise as well as its different methods and characteristics, such as the use of violence, guns, and people that are apparently strung out on drugs. United States v. Bynum, 567 F.2d 1167, 1170-71 (1st Cir. 1978); see United States v. Frokjer, 415 F.3d 865, 870-71 (8th Cir. 2005); United States v. Rivera Maldonado, 194 F.3d 224, 236-37 (1st Cir. 1999). Aside from the hours of tape which, at least out of context, contain no apparently incriminating evidence, there are lengthy recitations of the confidential informant. Thus, listening to the entirety of the tapes would be needless consumption of time for a jury and for the court. Thus the need for some excision unless the government can make a strong proffer for the need to play all tapes without interruption. The government proffers that the confidential informant will identify the speakers who

CIVIL 03-0055 (JAG)                                    8

were co-conspirators. Having listened to the tapes, considering the proffer of the government and the clear contents of the tapes, weighing the inaudible parts against the inaudible parts, I find that they are sufficiency trustworthy to be used at trial. I cannot say that 'the inaudible parts are so substantial as to make the rest more misleading than helpful.'" United States v. Carbone, 798 F.2d at 24 (citations omitted).

Once the proper foundation for the audiotapes is established, then the basis for allowing the use of transcripts is also established.  See United States v. Jadusingh, 12 F.3d 1162, 1168 n.8 (1st Cir. 1994).  This does not mean that there are no issues in relation to the transcripts.  However, there is no prohibition of the use of transcripts as an aid to the jury as long as their authenticity is established, as long as the jury is aware that the transcripts are to be used as an aid and that if there is a discrepancy between the transcript and the audiotape, the jury is to select the audiotape in that respect.  See, e.g., United States v. DiSanto, 86 F.3d 1238, 1250-51 (1st Cir. 1996).  There are gaps in parts of the transcripts where there are lengthy conversations that are irrelevant, are unintelligible, or where nothing is being said of any import. Nevertheless, the transcripts do not lose their value as an aid to assist the jury as they listen to these difficult recordings and the judge can give an appropriate cautionary instruction as to their use.

CIVIL 03-0055 (JAG)                            9

As a post-script, I note that portions of the audio recordings which I heard were admitted into evidence at the first trial, the trial of two co-defendants, José A. Ramos-Romero and Rafael A. González-Vélez.

In view of the above, I recommend that the motion to suppress or exclude Audiotapes and Transcripts be DENIED.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 3rd day of February, 2006.

                                        S/ JUSTO ARENAS
                                  Chief United States Magistrate Judge