IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff

v.

[1] CARLOS L. AYALA-LÓPEZ,
[10] EUSEBIO O. LLANOS-CRESPO,

Defendants

CRIMINAL 03-0055 (JAG)

AMENDED MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Docket No. 600; opposition Docket No. 666)

On July 27, 2005, co-defendant Carlos L. Ayala-López moved to suppress or exclude Luis Lloréns Torres Housing Project Videotapes under Rule 403, Federal Rules of Evidence, and the Fourth, Fifth, Sixth and Eighth Amendments of the United States Constitution. He also moved for a Pretrial Carbone[1] hearing. (Docket No. 600.) The defense argues that the videotapes operate at a high speed, like a Charlie Chaplin movie, which makes them impossible to view at their recorded speed. The defense argues that there are many missing videotapes and several days on which the equipment malfunctioned, and the equipment does not depict observable or identifiable images or persons in the evening hours.

The defense lists a number of reasons why the videotapes should not be allowed at trial. The list is similar to the reasons it proffers in its motion to exclude the Veterans Administration surveillance videotape, that is, that they do not accurately reproduce the incidents that took place; they are in certain cases unclear, dark and blurry; the videotapes are in high-speed and cannot be viewed; the tapes suffer from technical deficiencies, including malfunctions and errors, which make

---

[1] United States v. Carbone, 798 F.2d 21 (1st Cir. 1986).

CIVIL 03-0055 (JAG)                               2

them untrustworthy and unreliable; the tapes lack the requisite foundational basis necessary for admissibility; the tapes are vague and unclear and do not permit the viewer to ascertain with reasonable reliability the participants in the incident or their actions; the tapes will cause the jury to arrive at the interpretation of the alleged incidents depicted therein based upon mere speculation and imagination; the tapes are taken in some cases out of context and are incomplete, misleading, and unreliable; the tapes are in some cases poor; their arguably probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time; the tapes are not and cannot be authenticated; the tapes are more misleading than helpful.

Thus the defense concludes that the videotapes are unreliable, misleading, and inadmissible.

The United States opposes the motion to exclude, describing that the same generally depict co-conspirators committing acts during and in furtherance of the conspiracy, mainly the distribution of narcotics and possession of firearms at the drug point subject of the videos. The government notes that some of these tapes were found admissible in the previous trial which means that the court found the tapes to be clear, accurate and helpful to the jury. The government recognizes the contours of the requirements for admission at trial. See United States v. Bernal, 884 F.2d 1518, 1523-24 (1st Cir. 1989). The defense complains of the rapid speed of some tapes. The government notes that its own copies are at a normal rate of speed and that copies will be provided to the defense. The government explains that due to the format of the recording equipment, it is possible that when played at regular speed, the native images appear to move quickly. However, a digitized copy can be computer adjusted to show motion at normal speed. As part of the foundation at

CIVIL 03-0055 (JAG)                               3

trial, the government would present the necessary testimony in support. The government responds that the videotapes are generally trustworthy and accurately record the actions at the drug point over several days, using the audibility analogy. It argues further that the tapes are admissible unless the partially unintelligible portions are so substantial as to render the recording as a whole untrustworthy or more misleading than helpful. United States v. Carbone, 798 F.2d at 24 ([quoting] Gorin v. United States, 313 F.2d 641, 65[2] (1st Cir. 1963)).

To the contrary of the defendant's argument, the United States repostes that the videotapes depict members of the conspiracy charged in Count One engaging in drug sales, and that one specific videotape depicts defendant Ayala-López in possession of weapons at the drug point. Thus the evidence could not be more relevant or probative than that.

At the evidentiary hearings held on January 18, 19, and 31, 2006, the United States presented a number of silent, videotape surveillance tapes, as well a composite tape. All tapes depict people milling around, hanging around, moving from one point to another, looking for things in vehicle wheel wells, handing things to each other, an occasional umbrella might appear on a sunny day, thus, the normal garden variety activities of a typical Puerto Rico drug point. My observations, with input mostly from the defense, although as well from the government, are as follows:[2]

Exhibit 14, taken on June 14, 2002 at Las Malvinas drug point.

Exhibit 15, taken on June 20 2002 at Las Malvinas drug point.

---

[2] While invited to address foundation issues which would require technical witnesses to testify, I have focused the evidentiary hearings on the end product and its relation to the case and to the jury, assuming as I may that the government is fully aware of foundation requirements.

CIVIL 03-0055 (JAG)                    4

Exhibit 13, composite taken from videos of Las Malvinas drug point taken on June 6, 12, and 13. It shows electrical or other type of interference.

Exhibit 33a, taken on June 6, 2002 of Las Malvinas drug point.

Exhibit 34a, taken on June 12, 2002 of Las Malvinas drug point.

Exhibit 35a, taken on June 12, 2002 of Las Malvinas drug point.

Exhibit 36a, taken on June 13, 2002; a type of interference reflected on image.

Exhibit 37a, taken on August 13, 2002; interference and fuzziness.

Exhibit 38a, taken on August 13, 2002; interference and fuzziness.

Exhibit 39a, taken on May 18, 2002 (fast forward mode), due to defect in equipment. The defense argues that this high speed, like a Charlie Chaplin fast shuffle, is unfairly prejudicial and that the jury may think that they see something that is not there.

Exhibit 40a, taken on May 25-26, 2002; there was an issue of malfunction and dates, whether the tape contained May 25 through 29, as marked, but showed March 25 and 26.

Exhibit 41a, taken on May 7, 2002; grainy, high speed, shaky image, screen skipping, black on occasion, partially hazy, blurry, cloudy.

Exhibit 42a, taken on May 11, 2002; grainy, skipping, jumpy, blurry interference.

Exhibit 43a, taken on May 14, 2002; interference, jumpy.

Exhibit 44a, taken on May 20, 2002; snowy, jumpy, hazy, blurry interference lines.

Most of the videotapes observed in court are taken in daylight hours, generally at different times from about 10:00 a.m. to 4:00 p.m., and same speed unless speeded up on purpose or because of technical defects. The surveillance video

CIVIL 03-0055 (JAG)                              5

presented at the hearing on January 31, 2006 contained nighttime scenes. The nighttime scenes would go out of focus when the headlights of a car would hit the recording camera. There appeared to be some mechanical malfunction. See Exhibits G and H. The speed of the tape was irregular, and there is some bounce in the picture. The government announced that it would not be presenting nighttime video in its case.

In United States v. Carbone, 798 F.2d at 24, the First Circuit explained that when the government seeks to present tape recordings as evidence, "[t]he government has the duty of laying [the proper] foundation [to establish that] the tape recordings accurately reproduce the conversations that took place, i.e., that they are accurate, authentic, and trustworthy." Once this is done, then the party challenging the admissibility of audio tapes has the burden of demonstrating that the recordings are inaccurate. Id. (quoting United States v. Rengifo, 789 F.2d 975, 978-79 (1st Cir. 1986)). The generally accepted rule usually applied to audio recordings but equally applicable by analogy to videotapes is that when the challenge is to the audibility (or visibility) of the recordings, the question is "whether 'the inaudible parts are so substantial as to make the rest more misleading than helpful. . . .'" Id. (citations omitted). Admissibility of such tapes rests within the discretion of the trial judge. Id.; see also United States v. Brassard, 212 F.3d 54, 57 (1st Cir. 2000).

The surveillance videotape evidence which the government wishes to use at trial, part of which has already been used in the first trial, is in part and at times grainy, blurry, cloudy, dark, suffers from interference, is fast forwarded at times, skips, and is fuzzy. However, as in the case of the surveillance tape at the Veterans Administration, I cannot conclude that the unviewable, hazy, blurry, or fuzzy parts

CIVIL 03-0055 (JAG) 6

are so substantial as to make the rest of the viewing more misleading than helpful. See United States v. Bynum, 567 F.2d 1167, 1170-71 (1st Cir. 1978). Nor as a whole are they more untrustworthy than helpful to a jury. Indeed, this type of surveillance video evidence is commonplace in certain prosecutions, such as bank frauds or bank robberies, as well as in drug conspiracy prosecutions. Indeed the surveillance video, according to the government's theory, is a part of the evidence it will produce to show drug transactions at a particular drug point. The visibility of the tapes suffered from interference and other maladies at times, but enough of the videotapes presently clear enough scenes in relation to the government's proffer and those scenes are relevant to the purposes for which the government seeks to have them admitted. United States v. Nashawaty, 571 F.2d 71, 74 (1st Cir. 1978) (citing Gorin v. United States, 313 F.2d at 652). Furthermore, and while the tapes may be prejudicial, or extremely prejudicial, they are not unfairly prejudicial. They thus clear the hurdle of Rule 403, Federal Rules of Evidence.

In view of the above, I recommend that the motion to suppress or exclude Luis Lloréns Torres Housing Project Videotapes be DENIED.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6

CIVIL 03-0055 (JAG)                              7

(1st Cir. 1987); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 6th day of February, 2006.

S/ JUSTO ARENAS
Chief United States Magistrate Judge