1   IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
2

3   UNITED STATES OF AMERICA,

4   Plaintiff

5                                                    CRIMINAL 03-0055 (JAG)
v.
6

7   [1] CARLOS L. AYALA-LÓPEZ,
[10] EUSEBIO O. LLANOS CRESPO,
8

9   Defendants

10

11   MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Docket Nos. 573, supplemented by Docket Nos. 832, 840;  574,
12   supplemented by Docket Nos. 841, 843; 582; 652, supplemented
by Docket Nos. 833, 844; opposition Docket No. 794)
13

14   This matter is before the court on motions in limine of co-defendant Carlos L.

15   Ayala-López filed on July 20, 21, and October 6, 2005.  (Docket Nos. 573, 574, 582,

16   and 652)[1].

17   The United States opposed the motions on January 4, 2006.  (Docket No.

18   794.)  The motions in limine have been supplemented by Docket Nos. 832, 833, 840,

19   841, 843, and 844 to include additional grounds for exclusion, such as double

20   jeopardy, collateral estoppel, and loss of evidence, as well as to include a weapon and

21   other items seized from the vehicle co-defendant Ayala-López was traveling in on

22   January 30, 2002.[2]

23

24

25   [1]      The incidents related in the four motions in limine are the subject of motions
to suppress evidence.  (Docket Nos. 579, 580, 585, and 653.)

26   [2]      At the evidentiary hearing held on January 12, 2006, the defense was made
27   aware of additional evidence which was seized on January 30, 2002.  Thus the
motion in limine now includes a firearm seized from the vehicle, firearm related
28   evidence, photographs and any statements of the defendant.

CRIMINAL 03-0055 (JAG)                    2

The third-superceding indictment returned on December 7, 2005 (Docket No. 737), includes a number of overt acts, including the following which are addressed in three of the motions in limine, numbered below using the same numbers as in the indictment.

(6) On or about February 6, 2001, [1] CARLOS L. AYALA-LOPEZ, a/k/a "MACRO," possessed a measurable amount of marijuana. (See Docket No. 573.)

(7) On or about February 28, 2002, [1] CARLOS L. AYALA-LOPEZ, a/k/a "MACRO," possessed a .45 caliber Colt pistol as more fully set forth in Count Two of this Indictment, which count is incorporated by reference herein. (See Docket No. 574.)

(8) On or about March 31, 2002, [1] CARLOS L. AYALA-LOPEZ, a/k/a "MACRO," possessed a .357 caliber Ruger revolver as more fully set forth in Count Three of the Indictment, which count is incorporated by reference herein. (See Docket No. 582.)

The United States produced in late discovery evidence related to the arrest of co-defendant Ayala-López on January 30, 2002 where a small amount of marijuana and cocaine were allegedly seized from him. (See Docket No. 652.)

The argument of the defense in relation to the three overt acts subject of the motions in limine, and to the additional weapon seizure, is identical. The defense argues that the physical evidence in each case is irrelevant and not properly probative of any fact in issue which might relate to the conspiracy charged in Count One of the indictment. The defense argues further that the evidence related to such an allegation is so weak that "the criminal prosecution was dismissed." The defense argues that the government is trying to introduce evidence of bad character or propensity as to co-defendant Ayala-López. The defense' penultimate argument is

CRIMINAL 03-0055 (JAG)                    3

that under Rule 403, Federal Rules of Evidence, the probative value of such evidence is strongly outweighed by unfair prejudice, confusion of the issues, its misleading the jury, or by resulting in delay or waste of time.  In his final argument, the defense relies on "death is different" case law and that there is a higher standard of reliability for the entire process after Furman v. Georgia, 408 U.S. 238 (1972).

The United States opposes the four motions detailing the foundations upon which it would rely to introduce each piece of physical evidence subject of the exclusionary motions.  The United States stresses that the carrying and use of weapons are an intricate part of the conspiracy charged, as well as the possession of controlled substances.  It further stresses that the weapons charges are precisely related to the drug conspiracy and the methods used to further its goals.  As the result, these overt acts and the additional evidence related to the January 30, 2002 incident are probative and relevant.  Finally, the United States stresses that such evidence cannot be unfairly prejudicial because they are clearly and directly relevant to one element of  the conspiracy, that is, membership in such conspiracy.

I will proceed to the Rule 403 argument after briefly addressing the relevancy argument under Rule 401, Federal Rules of Evidence.  The defense argues that the proffered evidence in every case (making reference to the weapons and drugs) is not inextricably intertwined with Count One.  Such evidence would be of such a nature that it would be necessary to the proof of the charged offense.  See 22 Charles Alan Wright & Arthur R. Graham, Federal Practice and Procedure § 5239 (1978) (Supp. 1993), cited by the defense.  Notwithstanding the argument that the overt acts may not be inextricably intertwined with the offense described in Count One, such overt acts and such an act described as occurring on January 30, 2002 are easily relevant to the membership of the defendant in the conspiracy, and do not have to prove to

CRIMINAL 03-0055 (JAG)                    4

be inextricably intertwined with the drug conspiracy.  To join a drug conspiracy, a defendant must agree with others to advance the aim of the conspiracy--here, to possess drugs for distribution.  See United States v. García-Torres, 280 F.3d 1, 4 (1st Cir. 2002).  Advancing the aim of the conspiracy can involve performing ancillary functions such as processing and cooking drugs, procuring weapons, collecting monies, enforcing discipline, chastising rivals, accounting, and the like, as long as such actions are performed with the aim of furthering the conspiracy.  United States v. Soto-Beníquez, 356 F.3d 1, 18 (1st Cir.), cert. denied, 541 U.S. 1074, reh'g denied, 542 U.S. 958 (2004); see United States v. García-Torres, 280 F.3d at 4.  To hold that a defendant has "joined" a conspiracy, there must be sufficient evidence both that he knew about the conspiracy and that he knew the ancillary service would advance that conspiracy.  United States v. García-Torres, 280 F.3d at 4; United States v. Soto-Beníquez, 356 F.3d at 18.  Carrying weapons for the purpose of advancing the goals of the conspiracy is clearly such an ancillary undertaking, particularly if one considers the language of 18 U.S.C. § 924(c).  Furthermore, it is difficult to ignore that weapons are considered tools of the trade, and without much elaboration, are probative of a drug conspiracy.  See United States v. Walters, 904 F.2d 765, 769 (1st Cir. 1990); United States v. Green, 887 F.2d 25, 27 (1st Cir. 1989).[3]  Considering the specific and detailed proffer of the United States, and notwithstanding the possibly analogous arguments of the defense, clearly the overt acts subject to the motion in limine as well as the acts described in the January 30, 2002 incident are relevant to the membership in the conspiracy.  The fact that relatively small amounts of

---

[3]   See also United States v. Goff, 847 F.2d 149, 175 (1st Cir. 1988); United States v. Cresta, 825 F.2d 538, 554 (1st Cir. 1987).

CRIMINAL 03-0055 (JAG)                    5

controlled substances are involved does not limit their probative value in terms of the defendant's membership in the conspiracy.

Under Federal Rule of Evidence 403, the court may exclude relevant evidence "if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, . . . misleading the jury, or by . . . delay, [or] waste of time.'" United States v. Smith, 292 F.3d 90, 99 (1st Cir. 2002) (quoting Fed. R. Evid. 403); United States v. Varoudakis, 233 F.3d 113, 121 (1st Cir. 2000) (quoting Fed. R. Evid. 403). The defense argues the application of Rule 403, but notwithstanding such emphasis, it is clear that there is nothing unfairly prejudicial in presenting such evidence to a jury as part of the framework of a drug conspiracy, especially since two of the overt acts are counts in the indictment, weapons are tools of the trade, and marijuana and cocaine are clearly the object of the conspiracy. See United States v. Mojica-Báez, 229 F.3d 292, 303 (1st Cir. 2000). Indeed, it would be a challenge to find that what appears to be the normal evidence introduced in a trial dealing with a garden-variety conspiracy at a Puerto Rico drug point, should be excluded because its probative value is outweighed by unfair prejudice to the defendant. Cf. United States v. Russell, 919 F.2d 795, 798 (1st Cir. 1990). Furthermore, there is no waste of time, unreasonable delay, or confusion of any issues before a prospective jury. Rather than prove bad character or propensity, the evidence becomes relevant to prove membership, knowledge, and intent. Finally, the fact that "death is different" does not mean that the government is suddenly ham-stringed in its presentation of evidence when ordinarily it would not be.

The defendant raises the issue of double jeopardy, collateral estoppel (Docket Nos. 840, 843, 844) and loss of evidence. (Docket Nos. 832, 841, 833.) I addressed the issue of double jeopardy and collateral estoppel in a report and recommendation

CRIMINAL 03-0055 (JAG)                    6

of February 3, 2006, and paraphrase from that report.  The defendant relies on United States v. Sánchez, 992 F.2d 1143, 1150-53 (11th Cir. 1993), rev'd on other grounds, 3 F.3d 366 (11th Cir. 1993), for the proposition that the suppression of such evidence in local court operates as a double jeopardy and collateral estoppel bar to the government's prosecution of the defendant on any charges related to this firearm.  Id.  The law in this circuit is that Puerto Rico is a separate sovereign for purposes of double jeopardy.  See United States v. López Andino, 831 F.2d 1164, 1167-68 (1st Cir. 1987); United States v. Vega Figueroa, 984 F. Supp. 71, 78-79 (D.P.R. 1997).  "It is . . . well-settled law . . . that jeopardy "attaches" when a trial commences; that is, when a jury is sworn or empaneled or, in a bench trial, when the judge begins to hear evidence."  United States v. Bonilla, 836 F.2d 39, 42 (1st Cir. 1989) (citing Willhauck v. Flanagan, 448 U.S. 1323, 1325-26 (1980); United States v. Martin Linen Supply Co., 430 U.S. 564, 569 (1977); Serfass v. United States, 420 U.S. 377, 388 (1975)).  In Bonilla Romero, the court held that jeopardy did not attach as a result of the suppression of evidence ordered after hearing by the Puerto Rico Superior Court and the subsequent dismissal of charges under Puerto Rico law.  Id.  The conflict between the circuits is resolved by following the law in this circuit.  See also United States v. Arboleda, 929 F.2d 858, 867 (1st Cir. 1991); cf. United States v. Bouthot, 685 F. Supp. 286, 293 (D. Mass. 1988).

       As to the loss of evidence, the defendant argues that the government has admitted that it has forever lost the marijuana and matchbox allegedly seized from the defendant on February 6, 2002 (Docket No. 832), the two magazines and 16 bullets allegedly seized from the defendant on February 28, 2002 (Docket No. 841), and the marijuana and cocaine allegedly seized from the defendant on January 30, 2002. (Docket No. 833.)  He argues in the supplemental motions that the existence

CRIMINAL 03-0055 (JAG)                    7

of the lost evidence is material to his defense, that is, to his guilt and punishment. Assuming that some pieces of the evidence in question are not subsequently found, and were destroyed as a matter of course after the local charges were dismissed, the destruction alone is not enough to invite exclusion of such evidence.  First the defendant has mentioned how his Sixth Amendment rights have been violated by this loss of evidence because he is effectively unable to confront, analyze, and dispute the evidence due to the loss of precisely that evidence.  He argues that he has been irreparably harmed because of the loss of such evidence and that as a result, all of the evidence seized on January 30, February 6 and 28, 2002 should be excluded from the trial, as well as all of the evidence related to the stop, search, arrest, and seizure.  Finally it is argued that due to this loss of evidence, there has been an infringement of his Due Process rights under the Fifth and Fourteenth Amendment to the United States Constitution.  See Brady v. Maryland, 373 U.S. 83 (1963).

The cases of California v. Trombetta, 467 U.S. 479 (1984) and Arizona v. Youngblood, 488 U.S. 51 (1988), "together established a tripartite test to determine whether a defendant's due process rights have been infringed by law enforcement's failure to preserve evidence." United States v. Femia, 9 F.3d 990, 993 (1st Cir. 1993) (citing Griffin v. Spratt, 969 F.2d 16, 21 (3rd Cir.1992); Jones v. McCaughtry, 965 F.2d 473, 476-77 (7th Cir. 1992); United States v. Rastelli, 870 F.2d 822, 833 (2d Cir. 1989)).

In Trombetta, the Court stated: "Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the

CRIMINAL 03-0055 (JAG)                    8

defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. at 488-89 (citations omitted). In Youngblood, the Court added a third element, holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of the law." Arizona v. Youngblood, 488 U.S. at 58; United States v. Femia, 9 F.3d at 993.  "A defendant who seeks to suppress evidence formerly in the government's possession therefore must show that the government, in failing to preserve the evidence, (1) acted in bad faith when it destroyed evidence, which (2) possessed an apparent exculpatory value and, which (3) is to some extent irreplaceable. Thus in missing evidence cases, the presence or absence of good or bad faith by the government will be dispositive." United States v. Femia, 9 F.2d at 993-94; see United States v. Arache, 946 F.2d 129, 136-37 (1st Cir. 1991).  The defendant has not made a showing that its existence and/or use at trial would prove exculpatory. Cf. United States v. Femia, 9 F.3d at 994. The evidence was destroyed after it was no longer needed by the state authorities.  Therefore, there is no hint that bad faith accompanied the act of destruction.  See United States v. Shea, 211 F.3d 658, 668 (1st Cir. 2000); United States v. Marshal, 109 F.3d 94, 97-98 (1st Cir. 1997).  Indeed, not even evidence of negligent destruction is present. The motivation of the government in participating in the destruction of evidence is seminal in this matter.  And there is no evidence that the federal government participated in the destruction or disappearance of the evidence. The defendant must make a showing that the [government] was somehow improperly motivated.  United States v. Gallant, 25 F.3d 36, 39 n.2 (1st Cir. 1994), quoted in United States v. Garza, No. 04-2400, slip op. at 5, 2006 WL 163610, at *2 (1st Cir. Jan. 24, 2006). Again, there is no evidence of any improper motivation in

CRIMINAL 03-0055 (JAG)                    9

the loss or destruction of the evidence, assuming the same is not produced before trial.   Furthermore, the destruction of evidence in the course of implementing routine procedures militates against a finding of bad faith.  See United States v. Lewis, 40 F.3d 1325, 1340 (1st Cir. 1994), cited in United States v. Garza, No. 04-2400, slip op. at 5, 2006 WL 163610, at *2.

Finally, the defense argues that the government lacks proof of the proffered evidence, that is, that the defendant actually possessed at different times, a .357 caliber Ruger revolver on March 31, 2002, a .45 caliber Colt pistol on February 28, 2002, a .45 caliber Thompson pistol on January 30, 2002 and marijuana on February 6, 2002, and that the allegations are otherwise unreliable.  Whether the testimony of arresting officers Richard Avilés Abdul, Felipe Casiano Caraballo, and Enrique Seda Díaz is credible is a determination for the triers of fact.  I have heard the testimony of arresting officers and it is clear that issues of credibility were raised. The argument was clearly that since the local charges were dropped because local judges did not give sufficient credibility to the arresting officers, I should do the same.  I make my determinations independently from evidence that may be similar or identical to that presented in another court.  My recommendations are the result of my weighing the evidence presented before me.  Thus my recommendations.

In view of the above, I recommend that the motions in limine related to the .45 caliber colt pistol of February 28, 2002 (Docket No. 574), and supplemental motions (Docket Nos. 841, 843), the Ruger revolver of March 31, 2002 (Docket No. 582), the marijuana of February 6, 2002 (Docket No. 573), and supplemental motions (Docket Nos. 832, 840), and the arrest and seizures of January 30, 2002 (Docket No. 652) and supplemental motions (Docket Nos. 833, 844) be DENIED.

CRIMINAL 03-0055 (JAG)                    10

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 8th day of February, 2006.


                                        S/ JUSTO ARENAS
                                Chief United States Magistrate Judge