IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff

v.

[1] CARLOS L. AYALA-LÓPEZ,
[10] EUSEBIO O. LLANOS CRESPO,

Defendants

CRIMINAL 03-0055 (JAG)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Docket No. 579, supplemented by Docket Nos. 832, 840;
opposition Docket No. 665) (Arrest of February 6, 2002)

This matter is before the court on motion to suppress evidence filed by the defendant Carlos L. Ayala-López on July 20, 2005. (Docket No. 579.) The United States opposed the motion on October 3, 2005. (Docket No. 665.) The defense then supplemented its original motion on January 21, 2006 due to the admitted loss of evidence by the government (Docket No. 832), and on January 24, 2006 due to double jeopardy and collateral estoppel. (Docket No. 840.) The defense moved for suppression based upon the argument that there was a warrant for neither the arrest nor the search of the defendant, that the warrantless search was unreasonable, and the result of an arrest made without probable cause or reasonable suspicion. He also argues that the stop, detention, search and arrest could not be justified as a search incident to arrest and that co-defendant Ayala-López was conducting himself in a lawful manner in the Luis Lloréns Torres Public Housing

CRIMINAL 03-0055 (JAG)                              2

Project during daytime hours when arrested. Thus, defendant Ayala-López seeks to suppress the evidence on the grounds that it was obtained in violation of the Fourth Amendment guarantee against unreasonable searches and seizures. The defendant also seeks suppression because it was conclusively determined and admitted by the government at the evidentiary hearing, that the alleged marijuana and the matchbox which were allegedly seized from the defendant on February 6, 2002 have been lost forever (Docket No. 832) and because no probable cause was found in local court. (Docket No. 840.)

## I.  FACTUAL BACKGROUND

The United States argues in its memorandum that Ayala-López was arrested on January 30, 2002 by the United States Marshal's Service which was conducting an investigation into the whereabouts of fugitive (escapee) Hamel Benítez Ayala, who had been convicted of murder. At about 11:45 p.m., at a Burger King parking lot in Carolina, a vehicle believed to be occupied by Benítez Ayala entered the parking lot. Agents surrounded the vehicle and ordered the passengers to raise their hands and exit the vehicle which apparently was being driven by defendant Ayala-López. Both the fugitive and the driver were placed under arrest. A search of the vehicle revealed a .45 caliber pistol under the passenger seat. Ayala-López was searched incident to arrest and marijuana and cocaine were seized from his person. Probable cause was found by a local judge. Ayala-López failed to appear on February 4, 2002 as summoned and the court issued an arrest warrant against him.

CRIMINAL 03-0055 (JAG)                    3

On February 6, 2002, officer Felipe Casiano Caraballo entered the Luis Lloréns Public Housing Project and located co-defendant Ayala-López. The arrest warrant was then executed. During a search incident to arrest, an amount of marijuana was seized from his person. Therefore, according to the government, contrary to the argument of the defense, this arrest was based upon a warrant for failure to appear after the defendant was summoned in relation to the seizure of January 30, 2002.

At the evidentiary hearing held on January 12, 2006, Police of Puerto Rico Officer Felipe Casiano Caraballo testified that he has been a police officer for eight years, and was first assigned to the Luis Lloréns Torres Public Housing Project. He was later assigned to Special Operations San Juan, and later to the Safe Streets Task Force. His duties on February 6, 2002 were preventive patrolling. On that date, he saw defendant Ayala-López enter the housing project in a vehicle, possibly a grey or blue Gallant, together with four or five individuals whom he knew from sight. One of them was known as Johnny Menudo. The officer described three of the occupants of the vehicle, based upon his familiarity with their description if not their names. Officer Casiano Caraballo was aware that there was an arrest warrant outstanding which he had seen in relation to co-defendant Ayala-López. Indeed, on the day before, February 5, 2002, the officer had been given the warrant at the United States Marshal's Office at the Federal Building in San Juan. The warrant was not for failure to appear but rather was for violation of two weapons law articles (article 404 of the Puerto Rico Penal Code).

CRIMINAL 03-0055 (JAG) 4

Officer Casiano Caraballo went with other officers looking for the defendant and arrested him in front of Building 96 of the project. The officer identified himself to the defendant, and explained why he was arresting the defendant, who then questioned the arrest, stating "You are not going to arrest me!" The officer placed him under arrest after a struggle to get the handcuffs on since the defendant resisted the arrest. The officer did not then search co-defendant Ayala-López but rather removed the defendant from the area since people were arriving in the area and were shouting, protecting the co-defendant, and interfering with the officer. The officer took the defendant to the police station located in the Luis Lloréns Torres Public Housing Project. At the police station, the defendant was searched before he was placed in a cell and in his pocket was found a match box containing alleged marijuana, enough to make six or seven joints, depending on the quality, according to the witness. The substance was field tested and it yielded positive for marijuana. Also taken from the co-defendant was his jewelry, which consisted of two gold bracelets (one a Gucci and the other a Versace), a Rado gold wristwatch, and a gold ring with a big, black stone. The officer, who is familiar with gold jewelry although not an expert in its value, estimated the total value of the seized jewelry at $3,500 to $4,000. This jewelry was returned to a female friend of the defendant, Lymaris Esquilín Andrades, upon his instructions.

CRIMINAL 03-0055 (JAG) 5

Officer Casiano Caraballo was sure the arrest warrant was valid when he executed the same. The local district attorney pursued the charges although at the trial stage, no probable cause was found.

## II. DISCUSSION

The evidence in question was obtained as a result of a search following an arrest based upon a warrant the existence of which has been questioned. The defendant stresses that there was no warrant, or that if there was such a warrant, it was no longer valid. However, I find that the arresting officer believed there was a valid arrest warrant outstanding, a warrant he had recently received from the United States Marshal. As soon as practical after arrest, the defendant was searched. Aside from discovering and removing any weapon that a defendant might have with which he could resist arrest and compromise the officer's safety, the other reason for such a search is the interest of the state in preserving evidence that otherwise would be destroyed if not for a search incident to an arrest. See, e.g., United States v. Bizier, 111 F.3d 214, 217 (1st Cir. 1997).

The United States attached a simple copy of the arrest warrant issued by a state judge on February 4, 2002 to its opposition to the motion to suppress. While the question of whether the warrant was still outstanding on the sixth was brought up during the evidentiary hearing, the validity of the warrant and the belief by the arresting officer that the warrant was still valid were not eroded. Regardless of what eventually happened to the charges, the credible evidence related at the evidentiary

CRIMINAL 03-0055 (JAG)                              6

hearing reflects that the arresting officer was executing a valid warrant and that the search was sufficiently incident to arrest when it was conducted before the defendant was placed in a holding cell.

## LOSS OF EVIDENCE

The defendant argues in his supplemental motion that the government has lost the marijuana seized from the defendant on February 6, 2002 because its existence is material to his defense, that is to his guilt and punishment. That the evidence was destroyed as a matter of course after the local charges were dismissed is not enough to invite suppression of such evidence. The defendant has mentioned how his Sixth Amendment rights have been violated by this loss of evidence but has not made a showing that its existence and/or use at trial would prove exculpatory. The evidence was destroyed after it was no longer needed by the state authorities. There is no evidence that bad faith accompanied the act of destruction of the marijuana, and the defendant must make a showing "that the [government] was somehow improperly motivated." United States v. Gallant, 25 F.3d 36, 39 n.2 (1st Cir. 1994), quoted in United States v. Garza, No. 04-2400, slip op. at 5, 2006 WL 163610, at *2 (1st Cir. Jan. 24, 2006).

Furthermore, destruction of evidence in the course of implementing routine procedures militates against a finding of bad faith. See United States v. Lewis, 40 F.3d 1325, 1340 (1st Cir. 1994), cited in United States v. Garza, No. 04-2400, slip op. at 5, 2006 WL 163610, at *2. Finally, the destroyed evidence itself is not

CRIMINAL 03-0055 (JAG)                    7

necessary to be presented at trial in order to prove beyond a reasonable doubt that the defendant possessed the same on February 6, 2002. As a general matter, "[i]dentification of a controlled substance does not require direct evidence if available circumstantial evidence establishes its identity beyond a reasonable doubt." United States v. Walters, 904 F.2d 765, 770 (1st Cir. 1990) (quoting United States v. Harrell, 737 F.2d 971, 978 (11th Cir. 1984)); see also United States v. Clavis, 956 F.2d 1079, 1088 (11th Cir. 1992); United States v. Sánchez, 722 F.2d 1501, 1506 (11th Cir. 1984).

## DOUBLE JEOPARDY

In his memorandum of law of January 24, 2006, the defendant raises the issue of double jeopardy pointing out that the court should take judicial notice of finding of no probable cause by the local court. As in other motions, the defendant relies on United States v. Sánchez, 992 F.2d 1143, 1150-53 (11th Cir.), rev'd on other grounds, 3 F.3d 366 (11th Cir. 1993), for the proposition that the dismissal of the charges in local court operates as a double jeopardy and collateral estoppel bar to the government's prosecution of the defendant on any charges related to this marijuana. Balancing the argument, the defense notes that there is disagreement among the circuits on the issue of whether Puerto Rico is a separate sovereign in relation to the federal government.

The law in this circuit, as pointed out by the defense, is that Puerto Rico is a separate sovereign for purposes of double jeopardy. See United States v. López

CRIMINAL 03-0055 (JAG)                    8

Andino, 831 F.2d 1164, 1167-68 (1st Cir. 1987); United States v. Vega Figueroa, 984 F. Supp. 71, 78-79 (D.P.R. 1997). "It is . . . well-settled law . . . that jeopardy "attaches" when a trial commences; that is, when a jury is sworn or empanelled or, in a bench trial, when the judge begins to hear evidence." United States v. Bonilla Romero, 836 F.2d 39, 42 (1st Cir. 1987) (citations omitted). In Bonilla-Romero, the court held that jeopardy did not attach as a result of the suppression of evidence ordered after hearing by the Puerto Rico Superior Court and the subsequent dismissal of charges under Puerto Rico law. Id. The conflict between the circuits is resolved by following the law in this circuit. Cf. United States v. Bouthout, 685 F. Supp. 286, 293 (D. Mass. 1988).

### III. CONCLUSION

The arrest of the defendant performed on February 6, 2002 was valid because it was based upon an outstanding state arrest warrant. The resulting search was incident to a valid arrest. The subsequent loss of the evidence does not render evidence of its then existence and identity inadmissible. The dismissal at the preliminary hearing stage of the local charges based on the same seizure of February 6, 2002 does not bar subsequent prosecution for the same facts in this court under either double jeopardy or collateral estoppel. Therefore, it is my recommendation that the motion to suppress the matchbox and its contents of marijuana seized on February 6, 2002 be denied.

CRIMINAL 03-0055 (JAG)                              9

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 8th th day of February, 2006.

                                        S/ JUSTO ARENAS
                                Chief United States Magistrate Judge