IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff

v.

[1] CARLOS L. AYALA-LOPEZ,
[10] EUSEBIO O. LLANOS CRESPO,

Defendants

CRIMINAL 03-0055 (JAG)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Docket No. 653 (supplemented by Docket Nos. 833, 844);
opposition Docket No. 753) (Arrest of January 30, 2002)

This matter is before the court on motion to suppress evidence filed by the defendant Carlos L. Ayala-López on September 30, 2005 (Docket No. 653), as supplemented by motion filed on January 21, 2006, based upon loss of evidence (Docket No. 833), and on January 24, 2006, based on double jeopardy and collateral estoppel. (Docket No. 844.) The United States filed an opposition to the motion to suppress on December 13, 2005. (Docket No. 753.) The defense moved for suppression based upon the argument that the warrantless search of which he was the subject on January 30, 2002 was unreasonable, the result of an arrest made without probable cause or reasonable suspicion. The defendant also argues that the search which resulted in the discovery of cocaine and marijuana cannot be justified as a search incident to a valid arrest because such search was not conducted contemporaneous with the arrest of the defendant and was not confined to the

CRIMINAL 03-0055 (JAG)                2

immediate vicinity of his arrest. Thus, defendant Ayala-López seeks to suppress the evidence on the grounds that it was obtained in violation of the Fourth Amendment guarantee against unreasonable searches and seizures.

## I.  FACTUAL BACKGROUND

Co-defendant Ayala-López argues in his motion of September 30, 2005 (Docket No. 653) that the stop, search, detention, and arrest which occurred on January 30, 2002 were illegal, conducted without reasonable suspicion or probable cause, and violated the Fourth Amendment to the United States Constitution. He also argues that the arresting officers had neither a valid arrest nor search warrant to support their actions. As a consequence, he argues that all incriminating items seized from him, especially the cocaine, marijuana and weapon (a weapon seizure which was recently made known to the defense) be suppressed.

At the time of his arrest, the defendant was allegedly near a Burger King in Carolina, engaged in no illegal conduct. Discovery allegedly resulted in the existence of no warrant outstanding (as to him) to justify the arrest. The defendant also argues that the actions of the police in recovering the drugs and weapon were not contemporaneous with the arrest, that is, not incident to a valid arrest.

The United States retorts in its opposition of December 13, 2005 (Docket No. 753) that the officers had probable cause to arrest both the fugitive with whom the defendant was in a vehicle and the defendant Ayala-López, for harboring or transporting a fugitive. The United States filed a Second Notice of its Intention to

CRIMINAL 03-0055 (JAG)                    3

Introduce Evidence Pursuant to Rule 404(b) and Opposition to Exclude 404(b) Evidence on December 2, 2005 (Docket No. 715), which also addresses the facts of the arrest of January 30, 2002, that is, possession of a loaded pistol, Thompson, .45 caliber, serial number AOS59678, two plastic containers with marijuana, two plastic baggies with cocaine and $1,591 in United States currency. The government argues that such evidence is specially relevant since it is all directly probative of the defendant's involvement as a member of the conspiracy to distribute narcotics.

In summary, defendant Ayala-López was arrested on January 30, 2002 by the United States Marshal's Service which was conducting an investigation into the whereabouts of fugitive Hamel Benítez Ayala, a convicted, escaped murderer. At about 11:45 p.m., at a Burger King parking lot in Carolina, a vehicle believed to be occupied by Benítez Ayala entered the parking lot. Agents surrounded the vehicle and ordered the passengers to raise their hands and exit the vehicle which apparently was being driven by Ayala-López. Both the fugitive and the driver were placed under arrest. A search of the vehicle revealed a .45 caliber pistol under the passenger seat. Ayala-López was searched incident to arrest and marijuana and cocaine was seized from his person. Probable cause was found by a local judge.

At the hearing held on January 12, 2006, Police of Puerto Rico Officer Richard Avilés Abdul testified. A plainclothes police officer since 1983 when he began with the police, officer Avilés, who has never worked as a uniformed police officer, currently works with Immigration and Customs Enforcement and has worked with

CRIMINAL 03-0055 (JAG)              4

the agency for the last two years.  At the time of the arrest of defendant Ayala-López, officer Avilés was assigned to United States Marshal's Fugitive Task Force.

In the early afternoon of January 30, 2002, officer Avilés was working the 9:00 a.m. to 5:00 p.m. shift with his partner Deputy United States Marshal Rafael Escobar when a call was received from Danny Flores of the Department of Corrections Arrest Unit, for assistance in looking for Commonwealth fugitive Hamel Benítez, previously unknown to officer Avilés.  The fugitive had escaped from custody from the Bayamón prison on January 18, 2002, where he was serving a sentence for second-degree murder.  Marshal Escobar said to officer Avilés that they had to go to the area of Isla Verde in Carolina for a debriefing with corrections officers.  They proceeded to Isla Verde, met with several corrections officers, more than ten, and were shown a picture of fugitive Hamel Benítez.  Information revealed he was "hanging out" with an unknown individual.  The agents spread out in the vicinity of Isla Verde in Carolina and at about 11:30 p.m., officer Warren Almodóvar transmitted on the radio that the fugitive Hamel Benítez Ayala would be entering the parking area of the Burger King in the Plazoleta in Isla Verde and shortly later, information was received that he was riding in a burgundy colored Chevrolet Malibu and would be with another person.  The agents established surveillance in the vicinity and shortly after the information was received, the fugitive was sighted. The now target vehicle parked next to the Burger King and the agents, upon receiving instructions for a take-down, blocked the vehicle with a car and, guns drawn,

CRIMINAL 03-0055 (JAG)                    5

basically surrounded the 1998 Malibu. Agents yelled "You are under arrest!" The two passengers in the vehicle were instructed to get out of the car, which they did not do at first. They then both got out of the Malibu, the fugitive Benítez having to be pulled out of the vehicle, and both were placed on the ground, patted down and handcuffed. Both detainees were read their rights. During the pat-down, officer Avilés detected small bulges in the pants pockets of co-defendant Ayala-López and later determined that these reflected small packets with small amounts of marijuana and cocaine (which could be for personal use). Two of the items were circular, hard plastic with alleged marijuana inside. Defendant Ayala-López said that it was drugs. The packages were soft and hard. While the defendant was being searched, a check of the vehicle conducted before the arrestees left the area revealed a weapon under the front seat, passenger side of the vehicle. Deputy Marshal Escobar located the pistol, which later proved to be stolen. The same contained a magazine loaded with eight rounds. It was also later discovered that the vehicle was registered in the name of the mother of the defendant Ayala-López, Esperanza López. Also seized from the defendant Ayala-López was an amount of cash located in his pants pocket: $1,591. Both detainees were then placed in the back of a police car and taken to the federal building. At the federal building, officer Avilés gave the co-defendant a citation to appear in state court on February 4, 2002. The citation was signed both by the co-defendant and the officer. The co-defendant did not appear in the courtroom by about 2:23 p.m., on February 4, 2002, and the judge ordered his

CRIMINAL 03-0055 (JAG)                    6

arrest in the presence of officer Avilés. Probable cause was determined in his absence.

As a result of the arrests, the local district attorney charged the fugitive with a weapons violation but the case was dismissed by a local judge, who commented that there was cause as to defendant Ayala-López who was not charged by the local prosecutor.

In an inventory search conducted at the federal building, a picture of co-defendant Ayala-López with a pistol in his waistband was found.

## II. DISCUSSION

The marijuana, cocaine and weapon were seized as a result of the warrantless arrest and search of the defendant, although there was a type of warrant outstanding for the fugitive he was with.[1] It has been firmly established in federal law that warrantless searches are presumed unreasonable and illegal. However, a warrantless search can be legally conducted as a search incident to an arrest, one of the clear exception to the warrant requirement of the Fourth Amendment. United States v. Robinson, 414 U.S. 218 (1973). "A police officer may effect a warrantless search of the interior of a motor vehicle on a public thoroughfare as long as he has

---

[1] The testimony of officer Avilés discussed a "requerimiento" (requisition) which is a document treated like an arrest warrant, informing the police of the identity of an escaped detainee, or convict from the prison system. In any event, an escaped convict has less Fourth Amendment rights than a parole or probation violator and no warrant is required to arrest him, since he is considered to be in the State's legal custody. See, e.g., United States v. Cardona, 903 F.2d 60, 62 (1st Cir.1990); cf. Griffin v. Wisconsin, 483 U.S. 868, 870 (1987).

CRIMINAL 03-0055 (JAG)                7

probable cause to believe that the vehicle contains contraband or other evidence of criminal activity." United States v. Staula, 80 F.3d 596, 602 (1st Cir. 1996); see, e.g., United States v. Martínez-Molina, 64 F.3d 719, 726 n.5 (1st Cir. 1995). The scope of a search incident to an arrest is the person of the arrestee and the area immediately surrounding him. See Chimel v. California, 395 U.S. 752, 762-63 (1969); see also Knowles v. Iowa, 525 U.S. 113, 116 (1998). The rationale is based on a concern for the safety of officers while performing an arrest. Seeing that an arrest itself is a tense and inherently dangerous moment, the court saw the need to allow officers to search the arrestee and the area immediately surrounding him in order to discover and remove any weapon that might be used to resist arrest.

An objective assessment of the circumstances, that is, that an escaped murderer was being arrested, justified the search of defendant Ayala-López who accompanied him. See United States v. Tellez, 11 F.3d 530, 533 (5th Cir. 1993); see also United States v. Cofield, 391 F.3d 334, 337 n.1 (1st Cir. 2004). The fact known to the police that the escaped murderer could be armed and was dangerous justified stopping the car with guns drawn. See United States v. Taylor, 162 F.3d 12, 21 (1st Cir. 1998). Along side this concern for officer safety is the interest of the state in preserving evidence that otherwise would be destroyed if not for a search incident to an arrest. See United States v. Staula, 80 F.3d at 602. The defendant's pockets contained marijuana and cocaine and he was in the same vehicle as a recently escaped convicted murderer. This provides sufficient articulable facts for the officers

CRIMINAL 03-0055 (JAG)                8

to search the vehicle incident to the arrest of both the driver and the passenger. The defendant was thus lawfully arrested. See United States v. Staula, 80 F.3d at 602-03; United States v. Reyes-Mercado, 22 F.3d 363, 366 n.4 (1st Cir. 1994).

## DOUBLE JEOPARDY/COLLATERAL ESTOPPEL

In his supplement to the motion to suppress and to exclude evidence filed on January 24, 2006, the defendant raises the issue of double jeopardy pointing out that the court should take judicial notice of the Superior Court of Carolina as to a criminal case which reflects that the defendant entered a plea of guilty to the possession of marijuana and cocaine charges (Criminal No. FSC2002G0110; FSC2002G0094), and that the firearms count against him for alleged possession of a loaded .45 caliber Thompson pistol was dismissed. Again, the defendant relies on United States v. Sánchez, 992 F.2d 1143, 1150-53 (11th Cir.), rev'd on other grounds, 3 F.3d 366 (11th Cir. 1993), for the proposition that the dismissal of the weapons charges in local court operates as a double jeopardy and collateral estoppel bar to the government's prosecution of the defendant on any charges related to this firearm. Id. I repeat in part what I have previously noted in other recommendations.

Puerto Rico is a separate sovereign for purposes of double jeopardy. See United States v. López Andino, 831 F.2d 1164, 1167-68 (1st Cir. 1987); United States v. Vega Figueroa, 984 F. Supp. 71, 78-79 (D.P.R. 1997). "It is . . . well-settled law . . . that jeopardy "attaches" when a trial commences; that is, when a jury is

CRIMINAL 03-0055 (JAG)                    9

sworn or empanelled or, in a bench trial, when the judge begins to hear evidence." United States v. Bonilla Romero, 836 F.2d 39, 42 (1st Cir. 1987) (citations omitted). In Bonilla-Romero, the court held "that jeopardy did not attach as a result of the suppression of evidence ordered after hearing by the Puerto Rico Superior Court and the subsequent dismissal of charges under Puerto Rico law." Id.  The conflict between the circuits is resolved  by following the law in this circuit. Cf. United States v. Bouthout, 685 F. Supp. 286, 293 (D. Mass. 1988).  Furthermore, the United States is clearly not collaterally estopped from bringing a weapons charge in federal court which charge was dismissed in state court as a result of an agreement, or lack of evidence, or any other justiciable reason.

## LOSS OF EVIDENCE

The defendant argues in his first supplemental motion that the government has lost the marijuana and cocaine allegedly seized from the defendant on January 30, 2002 and that its existence is material to his defense, that is to his guilt and punishment. Assuming that the evidence in question is not subsequently found, and was destroyed as a matter of course after the convictions based upon his guilty plea, this is not enough to successfully  invite suppression of such evidence.  First the defendant has generically mentioned how his Sixth Amendment rights have been violated by this loss of evidence but has not made a showing that its existence and/or use at trial would prove exculpatory.  Indeed, it would be clearly inculpatory since he has already pleaded guilty to charges based upon the cocaine and marijuana in

CRIMINAL 03-0055 (JAG)                    10

local court.  How such evidence might prove exculpatory in a federal court is not easy to grasp.  The evidence was apparently destroyed after it was no longer needed by the state authorities.  Therefore, there is no hint that bad faith accompanied the act of destruction.  Clearly, the defendant must make a showing that the [government] was somehow improperly motivated. United States v. Gallant, 25 F.3d 36, 39 n.2 (1st Cir. 1994), quoted in United States v. Garza, No. 04-2400, slip op. at 5, 2006 WL 163610, at *2 (1st Cir. Jan. 24, 2006).  There is no evidence of any improper motivation in the loss or destruction of the evidence, assuming the same is not produced before trial.  Furthermore, the destruction of evidence in the course of implementing routine procedures militates against a finding of bad faith.  See United States v. Lewis, 40 F.3d 1325, 1340 (1st Cir. 1994), cited in United States v. Garza, No. 04-2400, slip op. at 5, 2006 WL 163610, at *2.

### DEATH IS DIFFERENT

Finally, the defendant asks the court to recognize, as it must, that "death is different" in resolving the lost evidence issue in its favor.  Of course, death is different in kind from all other criminal sanctions. Woodson v. North Carolina, 428 U.S. 280, 305 (1976), and "[b]ecause of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." Id.  All of the cases I have read, however, focus on the penalty phase of the death prosecution when they coin the phrase "death is different" or refer to the unique penalty and the need for safeguards

CRIMINAL 03-0055 (JAG)        11

in defending the rights of the defendant at that stage. See Ring v. Arizona, 536 U.S. 584, 586-87 (2002); Monge v. California, 524 U.S. 721, 731-34 (1998); Ford v. Wainwright, 477 U.S. 399, 411-12 (1986); Caldwell v. Mississippi, 472 U.S. 320, 329-330 (1985). Whether the fact that death is different means that the government is not allowed to strike fair blows at the guilt or innocence stage of court proceedings remains to be seen.

### III. CONCLUSION

In view of the above, I recommend that the motion to suppress the fruits of the January 30, 2002 stop, detention, arrest, search and seizure, as supplemented, be denied in its entirety.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v.

CRIMINAL 03-0055 (JAG)                     12

Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

    At San Juan, Puerto Rico, this 9th day of February, 2006.

                                      S/ JUSTO ARENAS
                             Chief United States Magistrate Judge